```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

| | |
|---|---|
| CHERYL ANNETTE HAMILTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-466-FHS-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Annette Hamilton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 21, 1973 and was 40 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant has worked in the past as a waitress, collections agent, retail manager, construction laborer, and sales representative. Claimant alleges an inability to work beginning October 25, 2008 due to limitations resulting from bipolar

3

disorder, headaches, neck pain, anxiety, short-term memory loss, PTSD, shingles, OCD, and alcoholism.

**Procedural History**

On August 3, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on May 25, 2011. On appeal, the decision was reversed and the case remanded by Order of the United States District Court for the Western District of Oklahoma on March 5, 2013.

On December 18, 2013, ALJ Larry Shepherd conducted a supplemental hearing. On June 27, 2014, he entered a second unfavorable decision. Claimant did not file exceptions to the decision with the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, she retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in disregarding probative evidence and failing to properly evaluate and weigh the opinion evidence offered by Claimant's treating psychiatrists.

**Consideration of Opinion Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of osteoarthritis, back disorder, migraines, asthma, posttraumatic stress disorder ("PTSD"), major depressive disorder, anxiety disorder, obsessive compulsive disorder by history ("OCD"), and shingles. (Tr. 549). The ALJ concluded that Claimant retained the RFC to perform light work except that she can only occasionally climb, balance, stoop, kneel, crouch, and crawl and reach overhead. Claimant was to avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation. Claimant could understand, remember, and carry out simple, routine, and repetitive tasks. Claimant could respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public. (Tr. 552).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of

5

mail sorter, routing clerk, and stock clerk. (Tr. 559). As a result, the ALJ found Claimant was not disabled from October 25, 2008 through the date of the decision. (Tr. 560).

Claimant contends the ALJ failed to properly evaluate the opinion of Dr. Fatema Haque, Claimant's treating psychiatrist. Claimant had sought mental care and suffered from severe anxiety and PTSD. (Tr. 323). On intake at the Northcare Mental Health Center, Claimant was diagnosed with PTSD, major depressive disorder, recurrent severe, and OCD. She was assessed a GAF of 35. (Tr. 340).

Dr. Haque examined Claimant on June 17, 2009. She found Claimant was depressed, anxious, and irritable. She angered easily and demonstrated a constricted affect. (Tr. 354). Dr. Haque diagnosed Claimant with depression, anxiety, impulse control disorder, and possible bipolar disorder and prescribed medication. Id. Dr. Haque continued to treat Claimant for these symptoms. Her GAF reached 68. (Tr. 370).

On November 25, 2009, Claimant was attended by Dr. Andrea James. Dr. James modified Claimant's medication after finding her current treatment was ineffective. She found Claimant to be unkempt with poor hygiene. She noted Claimant had symptoms of mood disorder and increased her medication. Claimant's GAF had not

6

increased. (Tr. 498-99).

Dr. James again evaluated Claimant on January 20, 2010. She found Claimant's condition was significantly deteriorating. Her affect was depressed and her judgment and insight were poor. Dr. James increased the dosage of Claimant's medication. She gave Claimant an GAF of 35. (Tr. 476-78).

On February 18, 2010, Dr. James found Claimant's mood was better but her anxiety had worsened and she had insomnia. Claimant was unkempt with poor hygiene, depressed and anxious. Claimant's medication was modified. Dr. James rated Claimant's GAF at 45. (Tr. 505-06).

On March 18, 2010, Claimant was seen by Dr. Haque. Claimant's GAF rating was 45. Claimant was anxious and her affect was constricted with decreased sleep. Claimant's medication was modified. (Tr. 507-08). Dr. James also modified Claimant's medication in April and June of 2010. (Tr. 510, 515). Claimant's GAF remained at 45. (Tr. 511, 515).

On October 15, 2010, Dr. Haque continued to rate Claimant's GAF at 45 and adjusted her medication. (Tr. 534-35). Claimant's mood remained depressed and anxious and her affect constricted with medication. Claimant's GAF remained at 45. (Tr. 538).

On February 14, 2011, Claimant was found by Dr. Haque to have

7

a depressed and anxious mood with irritability and mood swings. Her affect was constricted and her sleep was decreased. Claimant's GAF remained at 45. (Tr. 542-43).

The ALJ did not specifically identify Dr. Haque as a treating psychiatrist but only recognized the treatment records from the health center. He recognized Dr. James as examining Claimant but did not address him as a treating mental health professional or weigh his opinion.

. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The records consistently offer the opinions of these treating physicians that Claimant suffered from severe mental health issues

that were not being adequately treated with medication.  The ALJ shall recognize these physicians as treating doctors and weigh their opinions contained in their medical assessments under the rubric of Watkins.

The ALJ shall also consider the severity of Claimant's mental health by adequately evaluating the medical records of Dr. James and Dr. Haque.  In so doing, he shall also consider the effect of the consistently low GAF scores upon his assessment.  Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.  Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).  The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)).  The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere.  Lee, *supra* at 3.  However, a GAF of 50 or less does suggest

an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF of between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work . . . ." while a GAF between 41 and 50 encompasses a person who shows "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Id. Dr. James and Dr. Haque consistently found Claimant to have GAF scores between 35 and 45. Given this consistency, the ALJ shall discuss the effect these low scores might have upon his RFC determination on remand.

## Conclusion

The decision of the Commissioner is not supported by

11

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED** for further proceedings consistent with this Report. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 15th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE